UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN C. PREVOST,

                Plaintiff,         Civil Action No. 20-11961
                                          Honorable Paul D. Borman
v.                                        Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**<u>REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)</u>**

Plaintiff John Prevost ("Prevost") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Prevost was not disabled under the Act during the relevant time period. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED**, Prevost's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, and that pursuant to sentence

four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.    REPORT**

   **A.    Background**

Prevost was 51 years old at the time of his amended alleged onset date of September 26, 2012.[1]  (PageID.145, 150, 365).[2]  At 5'10" tall, he weighed between 160 and 180 pounds during the relevant time period.  (PageID.149, 292, 326).  He completed high school and one year of college but had no further education.  (PageID.150, 294, 328).  Previously, he worked as a chef in various capacities, but he stopped working full-time in 2008 because he was going through a divorce and "wanted to spend more time with [his] daughter" and because he felt he "became a liability to any place that would hire [him]."  (PageID.329, 370).  He now alleges disability primarily as a result of back pain and bipolar disorder.  (PageID.149, 334, 366-67).

This case has a somewhat complicated procedural history.  After Prevost's application for DIB was denied at the initial level, he timely requested an administrative hearing, which was held on April 17, 2014, before ALJ Thomas English.  (PageID.456-74).  Prevost, who was represented by attorney Kerry Spencer, testified at the hearing, as did vocational expert ("VE") Joanne Pfeffer.  (*Id.*).  On April 28, 2014, ALJ English issued a written decision finding that Prevost was not disabled under the Act prior to his date last

---

[1] For purposes of his application for DIB, Prevost's date last insured is March 31, 2013.  Thus, the issue in this case is whether Prevost was disabled under the Act between September 26, 2012, and March 31, 2013.

[2] Citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 11.

insured of March 31, 2013. (PageID.45-57). On July 20, 2015, the Appeals Council denied review. (PageID.35-38). Prevost appealed the final decision of the Commissioner to the United States District Court for the Eastern District of Michigan, and on June 13, 2016, the parties stipulated to remand the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). (PageID.410-13). Thus, on August 4, 2017, the Appeals Council issued an Order remanding the case with instructions that the ALJ give further consideration to, *inter alia*, the medical source opinions, the issue of medical equivalency at Step Three of the sequential process, and Prevost's RFC. (PageID.414-18).

After this remand, a second administrative hearing was held on January 9, 2018, before ALJ Lawrence Blatnik. (PageID.319-59). Prevost testified again at this hearing, as did VE Kenneth Browde. (*Id.*). On March 8, 2018, ALJ Blatnik issued a written decision finding that Prevost was not disabled under the Act between September 26, 2012, and March 31, 2013. (PageID.423-38). On February 13, 2019, the Appeals Council remanded the case for a second time, this time because ALJ Blatnik had not properly proffered post-hearing evidence to Prevost's counsel, or waited for a response, as he had indicated he would do. (PageID.447-48).

As a result, a third administrative hearing was held before ALJ Blatnik on August 27, 2019. (PageID.361-83). Prevost testified again at this hearing, as did VE Heather Blanton. (*Id.*). On September 18, 2019, ALJ Blatnik issued a written decision finding that Prevost was not disabled under the Act during the relevant time period. (PageID.291-305). On June 5, 2020, the Appeals Council denied review. (PageID.281-96). Prevost filed for judicial review of the final decision on July 21, 2020. (ECF No. 1).

3

The Court has thoroughly reviewed the transcript in this matter, including Prevost's medical record,[3] function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.    The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively

---

[3] The vast majority of the medical record pertains to a period well after Prevost's date last insured of March 31, 2013. (PageID.694-1259).

>  presumed to be disabled regardless of age, education, or work experience.
>
>  Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>  Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Prevost was not disabled under the Act during the relevant time period.  At Step One, the ALJ found that Prevost did not engage in substantial gainful activity between September 26, 2012 (the amended alleged onset date) and March 31, 2013 (the date last insured). (PageID.293).  At Step Two, the ALJ found that he had the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis, history of C4 laminectomy with fusion, hypertension, and depression/bipolar disorder.  (*Id.*).  At Step Three, the ALJ found that Prevost's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment during the relevant time period.  (PageID.294).

The ALJ then assessed Prevost's residual functional capacity ("RFC"), concluding that, through the date last insured, he was capable of performing light work, with the following additional limitations: could lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently; could sit for six hours and stand and walk up to four hours, but would be required to change position every hour for three to five minutes at a time while remaining at the work station; could occasionally use foot controls with both lower extremities and frequently use hand controls with both upper extremities; could frequently reach with both upper extremities and could frequently handle, finger, and feel with both hands; could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; was required to avoid all exposure to unprotected heights and moving mechanical parts and was limited to occasional exposure to extreme cold; and could perform simple, routine, and repetitive tasks. (PageID.297).

At Step Four, the ALJ found that, during the relevant time period, Prevost was unable to perform any of his past relevant work. (PageID.303). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that, during the relevant time period, Prevost was capable of performing the light jobs of stock clerk (70,000 jobs nationally), office clerk (50,000 jobs), and information clerk (75,000 jobs). (PageID.304). As a result, the ALJ concluded that Prevost was not disabled under the Act between September 26, 2012, and March 31, 2013. (*Id.*).

C.   **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

7

even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

Prevost's motion rests principally on one narrow argument about the RFC the ALJ adopted in the 2019 decision. But first the Court notes what Prevost does *not* argue; Prevost does not contend that any particular *record evidence* contravenes the 2019 RFC. Instead, Prevost argues that the ALJ's assessment of his RFC in the 2019 decision is not supported by substantial evidence solely because ALJ Blatnik had assessed a different RFC for the same period in his 2018 decision, and did not explain why he made that change. (ECF No. 13, PageID.1264-72). In response, the Commissioner argues that because the Appeals Council vacated the 2018 decision and remanded the matter to the ALJ without limiting the ALJ's authority to make different findings on remand, ALJ Blatnik was not bound by his earlier findings and was under no obligation to explain any differences in the two decisions. (ECF No. 15, PageID.1279-80). The Commissioner further argues that, regardless of the 2018 decision, the ALJ's latter RFC assessment finds support in the record. For the reasons set forth below, the Court finds merit to the Commissioner's arguments.

        1.     *ALJ Blatnik's 2018 and 2019 Decisions*

In both 2018 and 2019, ALJ Blatnik determined that Prevost was not disabled because he could have performed a reduced range of light work during the relevant time period, which would have allowed him to perform jobs existing in significant numbers in

8

the national economy. (PageID.291-305, 423-38). The analysis and findings in both decisions are similar, but the 2019 decision deviates from the 2018 decision in several respects, most importantly in the RFC assessments:

- 2018: The ALJ found that Prevost could have performed light work during the relevant period, with the following additional limitations: **required the ability to change position every 20 to 30 minutes for three to five minutes at a time;** could frequently handle, finger, and feel with both hands; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; needed to avoid all exposure to unprotected heights and moving mechanical parts; could tolerate only occasional exposure to extreme cold; and could perform simple, routine, and repetitive tasks. (PageID.429) (emphasis added).

- 2019: The ALJ found that Prevost could have performed light work during the relevant period, except that he could **stand and walk up to four hours in an eight-hour day, but would be required to change position every hour for three to five minutes at a time while remaining at the work station; could occasionally use foot controls with both feet and frequently use hand controls with both hands; could frequently reach with both arms** and could frequently handle, finger, and feel with both hands; could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; was required to avoid all exposure to unprotected heights and moving mechanical parts and was limited to occasional exposure to extreme cold; and could perform simple, routine, and repetitive tasks.

(PageID.297) (emphasis added).

In both 2018 and 2019, ALJ Blatnik found Prevost not disabled based on the testimony of a VE who identified jobs that an individual with the respective RFCs could perform. (PageID.270, 348-50, 377-78, 438).

    2. *The 2018 Decision Did Not Bind ALJ Blatnik in 2019 because it was Vacated by the Appeals Council*

Prevosts' challenge to the ALJ's 2019 decision is at least tacitly premised on the assumption that the ALJ was required to give credence to and/or explicitly analyze the

9

findings in his 2018 decision. (ECF No. 13, PageID.1266-71). But, as the Commissioner persuasively argues, no such requirement existed here. (ECF No. 15, PageID.1285-88).

The Appeals Council's February 2019 remand order effectively nullified ALJ Blatnik's 2018 decision. *See* Social Security Administration, Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-3-7-1 (https://www.ssa.gov/OP_Home/hallex/I-03/I-3-7-1.html) ("In most cases, the [Appeals Council] will vacate an ALJ's decision in its entirety when it remands a case. This action requires that an ALJ issue a new decision in the case.") (last accessed March 31, 2021). Given that the prior decision is typically vacated "in its entirety," it makes sense that the HALLEX does not direct the ALJ to explain any differences between his original decision and the one issued after remand.

Moreover, because the ALJ's 2018 decision was vacated, it never became final, and it did not bind the ALJ to any extent in 2019.[4] *Cf.* 20 C.F.R. § 404.955(a) (ALJ's decision is "binding on all parties to the hearing *unless* … [y]ou or another party request a review of the decision by the Appeals Council within the stated time period, and the *Appeals Council reviews your case*") (emphasis added). At the 2019 hearing, the ALJ explicitly

---

[4] The Court notes that nothing in the Appeals Council's February 2019 order limited the ALJ's authority to revisit the RFC on remand. The Appeals Council remanded the case because the ALJ had not afforded Prevost sufficient time to respond to certain evidence proffered after the hearing – namely, the interrogatory responses provided by David Dunbar, M.D. (PageID.447-48). These interrogatory responses included an opinion as to Prevost's RFC. (PageID.673). And, the Appeals Council gave the ALJ fairly broad instructions as to how to remedy this error: "Offer [Prevost] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (PageID.448). Nothing in these instructions prevented the ALJ from amending his prior decision as he saw fit. *See* 20 C.F.R. § 404.977(b) (when the Appeals Council remands a case, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."). Prevost does not contend that the ALJ's actions were somehow inconsistent with the Appeals Council's instructions, nor is any inconsistency apparent from the record.

alerted Prevost that the 2018 decision had been vacated, and his counsel did not object or attempt to narrow the scope of the hearing in any respect. (PageID.363) ("The prior unfavorable decision has been vacated, and it no longer has any binding force or effect.").

The Sixth Circuit case relied on by the Commissioner, *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir. 2003), is directly on point. Like this one, that case involved a single claim for benefits that was remanded multiple times, and the claimant there also argued that the "most recent ALJ decision regarding his [RFC] [was] erroneous as it [did] not adopt the findings of a previous ALJ decision." *Id.* at 571. The Sixth Circuit rejected this argument because the prior ALJ decision "never became final as [it was] vacated pursuant to [a] remand[] for further proceedings." *Id.* Because the only final decision in that record was the latest ALJ decision currently before the court, the Sixth Circuit found that the ALJ was not bound by any of the vacated findings in the prior ALJ decision. *Id*. This case is on all fours with *Wireman* because, here, the ALJ's 2019 decision is also the only final decision before the Court.[5] Therefore, for all of the above reasons, nothing prevented ALJ Blatnik from assessing a different RFC in 2019 than he did in 2018.[6]

---

[5] For this reason, Prevost's reliance on *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990), and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), is misplaced. (ECF No. 13, PageID.1269). In *Drummond*, the Sixth Circuit held that the RFC findings of an ALJ in a *final decision* concerning a prior claim are binding on the ALJ considering a subsequent claim, absent evidence of improvement in the claimant's condition. *Id.* at 842. But, *Drummond's* holding does not apply here because the ALJ's 2018 decision did not involve a prior claim, nor did it ever become final; rather, the Appeals Council vacated it. (PageID.447-48). *See Wireman*, 60 F. App'x at 571 (distinguishing *Drummond* on these bases).

[6] In his reply brief, Prevost argues that the ALJ erred in providing "no reasons whatsoever for changing his RFC determination" and, therefore, the 2019 RFC determination was necessarily arbitrary. (ECF No. 16, PageID.1302-03). But, the ALJ was not required to explain why he

11

### 3. The ALJ's 2019 RFC Assessment and Step Five Findings are Supported by Substantial Evidence

Not only was ALJ Blatnik not required to adhere to his 2018 RFC assessment in his 2019 decision, but Prevost has also failed to show that the 2019 RFC assessment is not supported by substantial evidence. Prevost is correct when he points out that the evidence underlying both decisions was the same, and that the ALJ used nearly identical language in analyzing the relevant evidence in both decisions. (ECF No. 13, PageID.1268) (compare PageID.293-303 with PageID.426-36). But, the relevant inquiry is not, as Prevost contends (ECF No. 13, PageID.1264, 1268-39, 1271), whether the ALJ adequately justified the changes in his findings, and, indeed, Prevost has cited no authority in support of that proposition. Rather, the only relevant inquiry is whether the ALJ's findings in the 2019 decision are adequately explained and supported by substantial evidence, which they are for the reasons set forth below.

Contrary to Prevost's contention, there is an "accurate and logical bridge" between the evidence and the 2019 RFC. (*Id.*, PageID.1269) (quoting *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)). Specifically, the ALJ's 2019 physical RFC assessment[7] is directly supported by Dr. Dunbar's opinion, which the ALJ afforded great weight. (PageID.302). After reviewing the record evidence

---

deviated from a vacated decision, and, as discussed below, the 2019 RFC assessment finds ample support in the record.

[7] Prevost does not challenge the ALJ's mental RFC assessment (*i.e.*, that he was limited to simple, routine, and repetitive tasks), which did not change between the 2018 and 2019 decisions. In any event, the mental RFC finds support in the opinion of consultative examiner John Jeter, MA, LLP, who opined that Prevost had no difficulty performing "repetitive, routine simple tasks[,]" an opinion to which the ALJ afforded significant weight. (PageID.301) (citing PageID.206).

for the relevant period, Dr. Dunbar opined that Prevost could lift 20 pounds occasionally and 10 pounds frequently; sit for two hours at a time and for six hours total in an eight-hour day; stand for one hour at a time and for four hours total in an eight-hour day; did not require a cane; could frequently reach, finger, and feel; could use foot controls occasionally; could never climb ropes or ladders, but could occasionally perform other postural activities; could never be around unprotected heights; could occasionally operate a motor vehicle; could tolerate frequent exposure to heat, dusts, gases, and fumes; and could tolerate occasional exposure to cold. (PageID.673). Indeed, Dr. Dunbar's opinion directly supports some aspects of the 2019 RFC assessment that were absent from the 2018 assessment; for example, his opinion that Prevost could only stand for one hour at a time directly supports the ALJ's 2019 finding that he needed to change position every hour (rather than every 20-30 minutes, as the ALJ found in 2018), and his opinion regarding Prevost's standing abilities, use of foot controls, and reaching abilities also directly supports the ALJ's 2019 findings. (*Compare* PageID.673 (Dr. Dunbar's opinion) *with* PageID.297 (2019 RFC) *and* PageID.429 (2018 RFC)).

In some respects, the ALJ's 2019 RFC assessment is actually *more* favorable to Prevost than the 2018 RFC, a fact that Prevost ignores. For example, in 2019, the ALJ limited Prevost to standing and walking four hours total per day (rather than six); he limited Prevost's use of both hand and foot controls; and he included a limitation to frequent reaching. (PageID.297, 429). Prevost correctly notes that the 2018 RFC is more restrictive in one regard: the ALJ found that he would need to change positions more often in the 2018 decision (every 20-30 minutes) than in the 2019 decision (every hour). (ECF No. 13,

13

PageID.1267). But, again, the 2019 finding that Prevost needed to change position every hour is directly supported by Dr. Dunbar's opinion, which the ALJ gave great weight, and Prevost has not pointed to any evidence in the record supporting the need to change positions more frequently, as is his burden. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (the claimant has the burden to show that a more restrictive RFC is warranted). Thus, ALJ Blatnik's 2019 RFC assessment is supported by substantial evidence.[8]

Finally, Prevost challenges ALJ Blatnik's Step Five findings in 2019 because he "did not rely upon the jobs which had been described by the VE at the prior hearing" that were consistent with the 2018 RFC but, instead, "obtained testimony from a different vocational witness" who identified three different jobs that Prevost could perform consistent with the 2019 RFC. (ECF No. 13, PageID.1270). Again, however, the ALJ was not required to adopt the 2018 RFC in 2019, so it was appropriate for him to question the new VE about the operative 2019 RFC. Thus, this derivative Step Five argument

---

[8] Prevost also points out one other minor discrepancy between the 2018 and 2019 decisions – namely, that in 2018, the ALJ found that he had moderate limitations in the domain of understanding, remembering, and applying information, but in 2019, he found mild limitations in this domain (though he relied on the exact same evidence and analysis in both decisions). (ECF No. 13, PageID.1267). As the Commissioner points out, however, this change appears to be nothing more than a scrivener's error. Specifically, despite stating at the beginning of the relevant paragraph that Prevost had mild limitations, the ALJ concluded the same paragraph by stating that the evidence supported "a finding of no more than 'moderate' difficulties in the domain of understanding, remembering, or applying information." (PageID.295-96). Moreover, the ALJ still assessed the same mental RFC to account for those limitations (PageID.297, 429) and gave the following explanation in 2019: "As a result of his mental health impairments and symptoms, the claimant is limited to simple, routine and repetitive tasks. These restrictions *fully accommodate the claimant's 'moderate' difficulties in the domains of understanding[,] remembering, or applying information* …." (PageID.300) (emphasis added). Thus, Prevost has not shown any resulting harm when the ALJ made no change to the RFC.

necessarily fails.  *See, e.g., Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (a VE's testimony constitutes substantial evidence in support of an ALJ's Step Five finding if it answers a hypothetical question that accurately portrays the claimant's limitations); *see also Kirchner v. Colvin*, No. 12-15052, 2013 WL 5913972, at *3 n. 2 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding[,]" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").  For these reasons, Prevost's Step Five argument is also without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, that decision should be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED**, Prevost's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 31, 2021                           s/David R. Grand            
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings

and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2021.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager